IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.   CRIMINAL ACTION NO. 3:24-00181

JEFFREY ARTHUR

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Defendant Jeffrey Arthur's Motion to Suppress Evidence. ECF No. 28. The parties fully briefed this Motion, and the Court held a hearing. For the reasons provided below, the Motion is **GRANTED**.

Also pending before the Court is Defendant Arthur's Motion in Limine to Exclude Evidence of Prior Felony Convictions at Trial. ECF No. 30. The parties informed the Court that they expect to enter into a stipulation that would moot the Motion. Accordingly, the Motion is **DENIED as moot**.

**I.   Background**

On August 23, 2024, several Putnam County Sheriff's Department officers converged on Gilpen Lane, located in Putnam County, West Virginia, and arrested Mr. Arthur. The officers went to Gilpen Lane because three people had reported to the Putnam County 911 Center that several shots had been fired in the area.

Deputy Pauley and Lieutenant Hall were first on the scene, with Deputies Fletcher and Campbell arriving thereafter. Deputy Pauley had negative interactions with several people and a dog while in Gilpen Lane, but he described his interactions with Mr. Arthur as calm and respectful. He and Lieutenant Hall were directed to Mr. Arthur's home, which is a trailer, by a passerby who

had heard shots fired in the area. As the officers approached, Mr. Arthur exited through his front door, stepped off his porch, and met the officers. The officers asked questions of Mr. Arthur. He informed the officers that he had been target practicing in his backyard. Mr. Arthur then escorted the officers through his side yard to show them where he had been shooting.

The officers asked Mr. Arthur if they could see the firearm,[1] and Mr. Arthur responded, "yes." Mr. Arthur then entered his trailer, and Deputies Pauley and Fletcher followed. At the hearing, Deputy Pauley admitted that neither he nor the other officers requested permission to enter. Further, the Government offered no evidence that Mr. Arthur's gestures or conduct gave consent for the officers' entry. The officers also did not obtain written consent to enter.[2] While in Mr. Arthur's trailer, Deputies Pauley and Fletcher retrieved a revolver, which had been in a backpack. The officers did not search any other portion of the trailer. Shortly thereafter, all parties returned outside.

After obtaining the firearm, the officers searched Mr. Arthur's criminal record and the serial number of the firearm. The search revealed Mr. Arthur had two felony convictions. The officers placed Mr. Arthur under arrest. After the arrest, Deputy Pauley read Mr. Arthur his *Miranda* rights and conducted an interview in which Mr. Arthur provided incriminating statements. A criminal complaint filed in Putnam County Magistrate Court charged Mr. Arthur with one count of being a prohibited person in possession of a firearm and four counts of wanton endangerment involving a firearm.

---

[1] Mr. Arthur contests this characterization of events. He said Lieutenant Hall ordered him to retrieve the firearm.

[2] At the hearing, Deputy Pauley testified that the Putnam County Sheriff's Department has a form that homeowners can sign to provide express written consent for officers to enter. Deputy Pauley said he had left this form in his vehicle, which was a significant distance away from Mr. Arthur's home.

On November 5, 2024, a federal grand jury returned a one-count indictment charging Mr. Arthur with being a Felon in Possession of a Firearm. After this indictment, Mr. Arthur gave incriminating statements in another interview.

Mr. Arthur now motions the Court, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C) and the Fourth Amendment, to suppress evidence of the weapon, ammunition, and the two incriminating statements.

## II.    Discussion

The Fourth Amendment protects people against unreasonable searches and seizures of their person, house, papers, and effects. U.S. Const. amend. IV. The Supreme Court has instructed that "the home is first among equals" for purposes of the Fourth Amendment. *Collins v. Virginia*, 584 U.S. 586, 592 (2018) (quoting *Florida v. Jardines*, 569 U.S. 1, 6 (2013)). Warrantless searches and seizures inside a home are presumptively unreasonable. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). There are multiple exceptions to the warrant requirement. *Id.* However, the only exception meaningfully contested in this case is whether Mr. Arthur gave valid consent for this search and seizure.

When a person has voluntarily given consent for officers to conduct a search, that search is generally considered reasonable and not in violation of the Fourth Amendment. *Florida. v. Jimeno*, 500 U.S. 248, 250–51 (1991). Consent can be either express or implied. *United States v. Hylton*, 349 F.3d 781, 786–87 (4th Cir. 2003). Accordingly, courts must consider words and actions in determining whether someone has consented to a search. *Id.* at 786.

The burden is on the Government to establish, by a preponderance of the evidence, that there was valid consent to conduct the search. *United States v. Toyer*, 414 F. App'x 584, 588 (4th Cir. 2011). This "burden is heavier where consent is not explicit, since consent is not lightly to be

inferred." *United States v. Neely*, 564 F.3d 346, 350 (4th Cir. 2009) (quoting *United States v. Impink*, 728 F.2d 1228, 1232 (9th Cir. 1984)). More than mere acquiescence to apparent lawful authority is necessary to overcome this burden. *Bumper v. North Carolina,* 391 U.S. 543, 548–49 (1968).

The Government contends that the officers obtained implied consent to search Mr. Arthur's home. The Government points to Mr. Arthur's affirmative response to Deputy Pauley's request to see the firearm. The Government further notes that Mr. Arthur did not tell the deputies that they could not enter.[3]

Mr. Arthur argues that he never consented to allow entry or a search of his home. He maintains that consent cannot be inferred from agreeing to show officers the firearm while not explicitly disavowing their entry into his trailer. He also disagrees with a significant portion of the Government's factual claims.

The question before the Court is whether consent to enter a home is implied after officers ask to see a firearm and receive an affirmative answer. The Court holds it is not. Importantly, the burden is on the Government to establish consent, and the Government's burden is heavier when the consent is ostensibly implied. *Neely*, 564 F.3d at 350. The Government cannot meet its burden even when the Court credits the officers' testimony describing the interaction.

First, the Court concludes that Mr. Arthur informing the officers that they could see the firearm does not imply consent for them to enter his trailer. Prior to this question, Mr. Arthur's interactions with the officers occurred entirely outside of his trailer. Mr. Arthur agreeing to show

---

[3] The Government also claims Mr. Arthur never asked the officers to leave after they had entered. At the hearing, Mr. Arthur strongly disagreed with this claim. The Court need not determine the veracity of the claim, since, as detailed below, the Court finds the officers did not obtain consent to enter in the first place.

the officers the firearm does not equate to inviting the officers inside. Mr. Arthur showing the officers the weapon would reasonably have been expected to take place outside Mr. Arthur's trailer, as the entirety of the interaction had to that point.[4]

Additionally, the Court will not infer consent simply because Mr. Arthur did not explicitly tell the officers not to enter. This Court agrees with the sentiment that implicit consent "can be inferred from silence or failure to object to a search only if that silence follows a request for consent." *Smith v. Lee*, 73 F.4th 376, 381 (5th Cir. 2023) (quoting *United States v. Staggers*, 961 F.3d 745, 757 (5th Cir. 2020)). The officers in this case admitted that they never asked permission to enter Mr. Arthur's trailer, and this Court will not infer consent from silence to a question never asked. Ultimately, the Government has not pointed the Court to any words, body language, or conduct from which the Court could infer implicit consent from this interaction.

In making this decision, the Court found *United States v. Harvey* illustrative. 901 F. Supp. 2d 681 (N.D.W. Va. 2012). In *Harvey*, Judge Irene M. Keeley held that a defendant had not consented to a search when entering his home to retrieve identification. *Id.* at 690–96. The officer had detained but not arrested the defendant during a lawful traffic stop. *Id.* at 690. During the stop, the defendant informed the officer that his identification was in his home, and the defendant then entered his home to retrieve the identification. *Id.* at 690–91. The officer followed. *Id.* At a hearing, the officer could not recall whether he informed the defendant that he would escort the defendant into the home. *Id.* The officer never asked permission to enter the home, but he said the defendant never denied him entry. *Id.* While inside, the officer noticed hints of heroin and marijuana. *Id.* He

---

[4] The Court is sympathetic to the safety concerns posed by sending Mr. Arthur in to retrieve a weapon. However, the Government has made no argument that such a scenario somehow obviates the need for consent in this case.

and another officer relied on this information to obtain a search warrant, and the subsequent search resulted in the officers recovering a pistol. *Id.* at 691–92.

Judge Keeley held the above facts did not establish implied consent. Judge Keeley reasoned that the defendant's disclosure of the location of the identification did not equate to giving permission to enter the home. *Id.* at 693. Judge Keeley then determined that the defendant's silence and lack of resistance as the officer entered the defendant's home was at most an acquiescence to a showing of lawful authority. *Id.* at 695.

The Court recognizes that the context of the search in *Harvey* is distinct from that in this case but still finds the underlying reasoning to be informative. In this case, as was true in *Harvey*, the Court will not infer consent from a tangential request, nor will it infer consent from silence or a lack of resistance.

Finally, Mr. Arthur also argues that, pursuant to the fruit of the poisonous tree doctrine, all evidence subsequently obtained against him as a direct result of this illegal search, including incriminating statements made in custody, should be suppressed. As the Government did not contest this point in briefing or at the hearing, the Court agrees with Mr. Arthur.

### III.    Conclusion

Based on the above analysis, the Court **GRANTS** Defendant Jeffrey Arthur's Motion to Suppress Evidence. ECF No. 28.

The Court also **DENIES as moot** Defendant Jeffrey Arthur's Motion in Limine to Exclude Evidence of Prior Felony Convictions at Trial. ECF No. 30.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel and the defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

    ENTER:    March 20, 2025

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE